UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF VIRGINIA
CHARLOTTESVILLE DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>TADASHI DEMETRIUS KEYES,<br><br>*Defendant.* | CASE NO. 3:03-cr-8-4<br><br>MEMORANDUM OPINION<br><br>JUDGE NORMAN K. MOON |

This matter is before the Court on Defendant Tadashi Demetrius Keyes' motion for reduction of sentence pursuant to the First Step Act of 2018. Dkts. 433, 436. After reviewing the submissions from both sides, the record, and recent developments in the Fourth Circuit's caselaw, the Court determines that Keyes' sentence should be reduced. The Court further finds, based on a recalculation of the Sentencing Guidelines and fresh consideration of the § 3553(a) factors, that a downward variance is appropriate.

I.

A.

In 2002 law enforcement began investigating a large-scale drug conspiracy in Charlottesville, Virginia. Dkt. 437, Presentence Investigation Report ("PSR"), ¶ 10. Investigators identified Keyes, who was 18 at the time, and Gregory Felton as the operation's "enforcers." *Id*. at ¶ 14. Both individuals carried and used firearms in conjunction with their role. *Id*. On one occasion, Keyes and Felton robbed a drug user they suspected of being an undercover officer or informant. Keyes shot the user in the arm during the struggle. *Id*. at ¶ 15. Later, in the presence of Keyes and other co-conspirators, Felton shot and killed a man the conspirators believed to

have stolen firearms from them. *Id*. at ¶ 16. Based on information received during the investigation, the probation office estimated that Keyes was responsible for the distribution of at least 1.5 kilograms of cocaine in connection with the conspiracy. *Id*. at ¶ 17.

A grand jury indicted Keyes for conspiracy to distribute 50 grams or more of cocaine base in violation of 21 U.S.C. §§ 841(a)(1) and 841(b)(1)(A) and possession and use of a firearm during and in relation to a drug trafficking crime in violation of 18 U.S.C. § 924(c). Dkt. 40. Keyes maintained his innocence, was tried, and convicted by a jury on both counts. Dkt. 147.[1]

At the time of his original sentencing the Sentencing Guidelines called for a sentence of life imprisonment on the drug conspiracy offense. Under the then-applicable statutory provisions, the minimum and maximum terms for the offense were 10 years and life imprisonment. *See* PSR ¶ 58. His base offense level was cross-referenced to first degree murder because of the shooting death described above, resulting in a base offense level of 43. *Id*. at ¶ 25. His criminal history score was calculated to be 3, with one point for a prior juvenile conviction for damage to private property and two points for the fact that the offense was committed while Keyes was on probation. *Id*. at ¶¶ 37–40. With an offense level of 43 and a criminal history category of II, the guideline range for the drug conspiracy offense was life. *Id*. at ¶ 59.

The Guidelines were mandatory at the time of Keyes' sentencing. Accordingly, the Court sentenced Keyes on September 21, 2004, to life imprisonment plus 120 months.[2] Dkt. 206.

**B.**

---

[1] Despite Keyes' representation to the contrary, *see* Dkt. 457 at 4, the jury verdict form reflects an explicit finding of guilt for conspiracy to distribute "50 grams or more of cocaine base[.]" Dkt. 149. Therefore, the Court does not address Keyes' argument that the statutory penalty should be determined by 21 U.S.C. § 841(b)(1)(C).

[2] The Guideline Sentence for the gun offense was 120 months and, by statute, the term for the gun offense had to run consecutively to any other sentence. PSR ¶ 60.

In 2010 Congress passed the Fair Sentencing Act. That statute "reduced sentencing disparities between cocaine and crack cocaine offenses, which were widely criticized for producing racially disproportionate sentencing outcomes." *United States v. Collington*, 995 F.3d 347, 355 (4th Cir. 2021). Congress passed the First Step Act eight years later to allow for resentencing of individuals who were sentenced too early to benefit from the First Step Act's reforms. *Id*. at 352

Section 404(b) of the First Step Act of 2018 permits "a court that imposed a sentence for a covered offense" to "impose a reduced sentence as if sections 2 and 3 of the Fair Sentencing Act of 2010 were in effect at the time the covered offense was committed." A "covered offense" is defined as "a violation of a Federal criminal statute, the statutory penalties for which were modified by section 2 or 3 of the Fair Sentencing Act of 2010[.]" *Id*. The Fourth Circuit has interpreted this language to make "[a]ll defendants who are serving sentences for violations of 21 U.S.C. § 841(b)(1)(A)(iii) and (B)(iii) . . . eligible to move for relief under the Act", regardless of whether their offense conduct could have been charged under a different provision not altered by the Fair Sentencing Act. *United States v. Wirsing*, 943 F.3d 175, 185 (4th Cir. 2019).

"As with initial sentencings, the First Step Act tasks district courts with making a holistic resentencing determination as to whether the original sentence remains appropriate in light of the Fair Sentencing Act's reforms." *Collington*, 995 F.3d at 355. The court must "consider a defendant's arguments, give individual consideration to the defendant's characteristics in light of the [18 U.S.C.] § 3553(a) factors, determine . . . whether a given sentence remains appropriate in light of those factors, and adequately explain that decision." *United States v. Webb*, 5 F.4d 495, 498–99 (4th Cir. 2021) (quoting *Collington*, 995 F.3d at 360). Of particular relevance to this case is the Fourth Circuit's recent holding that "district courts abuse their discretion in letting stand a

sentence of imprisonment that exceeds the statutory maximum established by the Fair Sentencing Act." *Collington*, 995 F.3d at 356.

## II.

### A.

The offense for which Keyes seeks a sentencing reduction, 21 U.S.C. § 841(b)(1)(A), is clearly a "covered offense" within the meaning of the First Step Act.[3] *Terry v. United States*, 141 S. Ct. 1858, 1864 (2021) ("In light of the clear text, we hold that § 2(a) of the Fair Sentencing Act modified the statutory penalties only for subparagraph (A) and (B) crack offenses—that is, the offenses that triggered mandatory-minimum penalties."). Contra the government's insistence to the contrary, Dkt. 443 at 2, the fact that the drug weight finding at sentencing may have exposed Keyes to prosecution under a different count not covered by the Fair Sentencing Act was deemed irrelevant by the Fourth Circuit's *Wirsing* decision. Therefore, the Court will resentence Keyes under the statutory provisions of the Fair Sentencing Act, including by recalculating the Guideline range and by giving fresh consideration of the § 3553(a) factors.

### B.

The Sentencing Guidelines now call for a sentence of 480 months for the drug conspiracy offense. The Fair Sentencing Act reduced the maximum sentence for a violation of 21 U.S.C. § 841(b)(1)(A) from life to 480 months. Applying the Guidelines, Keyes would still have a base

---

[3] In an opinion in the companion case against Keyes' co-Defendant, Gregory Felton, the Court discusses the possibility that all counts making up a sentencing bundle, including noncovered offenses under the First Step Act's resentencing provision, should be subject to resentencing. Because Keyes has not asked for resentencing of his § 924(c) count, and because the Court would impose the same sentence regardless under the § 3553(a) factors, the Court declines to address the issue. *Cf. Dean v. United States*, 137 S. Ct. 1170, 1176–77 (2017) ("Nothing in § 924(c) restricts the authority conferred on sentencing courts by § 3553(a) and the related provisions to consider a sentence imposed under § 924(c) when calculating a just sentence for the predicate count.").

offense level of 43 due to the murder cross-reference.[4] Regardless of criminal history category, a base offense level of 43 corresponds to a Guideline sentence of life. *See* U.S.S.G. § 5A, Sentencing Table. However, the new statutory maximum triggers the cap provided by U.S.S.G. § 5G1.1(a), which instructs that "where the statutorily authorized maximum sentence is less than the minimum applicable guideline range, the statutorily authorized maximum sentence shall be the guideline range." Therefore, the Guideline sentence is the new statutory maximum sentence of 480 months.

Thus, Keyes new Guideline sentence is 600 months, consisting of 480 months on the drug count and 120 consecutive months on the gun count.

The question remains whether Keyes is eligible for a variance from the Guideline sentence. 18 U.S.C. § 3553(a) specifies the factors courts are to consider in imposing a sentence. The list of factors is preceded by a broad admonition that courts "impose a sentence sufficient, but not greater than necessary, to comply with" the purposes of sentencing, which the statute identifies as just punishment, deterrence, protection of the public, and rehabilitation. The § 3553(a)(2)(A) factors call for, among other things, a sentence that "reflect[s] the seriousness of the offense," "promote[s] respect for the law," and "provide[s] just punishment[.]"

Keyes was 18 years old at the time of the offense. U.S.S.G. § 5H1.1 provides that "[a]ge (including youth) may be relevant in determining whether a departure is warranted[.]." Similarly, under § 3553(a), the "nature and circumstances" of the offense, as well as a defendant's "history and characteristics" are relevant to sentencing. § 3553(a)(1). The Court finds it especially significant that Keyes was much younger than other members of the

---

[4] The Fourth Circuit upheld the murder cross-reference to first-degree murder in this case. *United States v. Keyes*, 284 F. App'x 105, 106 (4th Cir. 2008).

conspiracy, *see* Dkt. 436 at 19 (noting that the co-conspirators who agreed to plea deals were 15, 21, and 26 years older than Keyes), which the Court considers to be a mitigating factor in assessing his culpability. "The Supreme Court has recognized, in the sentencing context, the diminished culpability of juvenile offenders, given their lack of maturity, vulnerability to social pressures, and malleable identities." *United States v. Howard*, 773 F.3d 519, 531 (4th Cir. 2014) (citing authority).

The Court also notes, and finds significant, that Keyes did not fire the shot that killed the man suspected of stealing from the conspiracy. To be clear, the first-degree murder cross-reference remains appropriate under the guidelines. But in assessing Keyes' culpability under the § 3553(a) factors, the Court finds it appropriate to consider that Keyes was not the shooter.

On the other hand, the serious nature and circumstances of Keyes' offense cannot be ignored. Keyes participated in a conspiracy that distributed significant quantities of cocaine in Charlottesville. He was known as one of the organization's enforcers, pulling the trigger at least once to cause bodily injury, and being present with other co-conspirators when Felton committed murder in furtherance of the conspiracy. The Court finds that the violence and quantity of drugs associated with the conspiracy is a significant factor weighing in favor of a substantial term of incarceration.

Another § 3553(a) factor is the "need for the sentence imposed", including "to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;" as well as "to afford adequate deterrence to criminal conduct;" and "to protect the public[.]" § 3553(a)(2). Again, the Court finds that a substantial term of incarceration is warranted under these factors because of the violence and quantity of drugs involved in the conspiracy. And though Keyes has signaled some steps toward rehabilitation by earning his GED

in prison, in addition to completing courses in parenting, wellness, personal growth, and financial management, Dkt. 449, Ex. 1, the Court finds Keyes' disciplinary record to raise serious concerns. *See* Dkt. 433, Ex. A, Inmate Disciplinary Data. *Cf. United States v. Lancaster*, 997 F.3d 171, 175 (4th Cir. 2021) (reaffirming that in the § 3553(a) analysis of a First Step Act resentencing, "the court can take into account a defendant's conduct after his initial sentencing."). While the Defendant argues that his record "is not that of a violent agitator who poses a continued risk to public safety", but "someone simply trying to survive in remarkably dangerous environments", Dkt. 449 at 2, prison conditions cannot excuse the multiple instances of assault and possession of dangerous weapons reflected in the record. On one occasion in 2016, Keyes is reported to have joined two inmates in beating another individual. Dkt. 443, Ex. B, Discipline Hearing Report. When the guards attempted to intervene, Keyes ignored their commands to stop and had to be restrained. *Id*. Another incident in 2013 involved Keyes beating a fellow inmate in the food line. Dkt. 443, Ex. C, Disciplinary Hearing Report. To be sure, disciplinary records and hearing reports afford a limited vantage point from which to assess an inmate's progress. However, the Court finds significant the sheer quantity of infractions Keyes' has accumulated during his nearly two-decades in prison. They do not paint the picture of a defendant who is wholly committed to rehabilitation and reform.

      Finally, § 3553(a)(6) requires courts to impose a sentence that avoids "unwarranted sentence disparities" among defendants with similar records and culpability. In this vein, the Court notes that Keyes received a significantly longer sentence than every one of his co-conspirators, including those who would have been subject to the murder cross-reference, except for Felton—the only co-defendant charged with murder. Dkt. 436 at 18. The docket reflects that co-Defendant Alonzo Trice, purported to be the leader of the conspiracy, PSR ¶ 14, received a

sentence of 180 months. Recognizing that Trice received a substantially shorter sentence because of a substantial assistance motion, it is noteworthy that his cooperation was in part to testify against his younger co-Defendants. While the "mere disparity among co-defendants' sentences is not a permissible ground for departure," *United States v. Quinn*, 359 F.3d 666, 682 (4th Cir. 2004), here there is much more. The incongruity between Keyes' sentence and that of his co-defendants only supports a conclusion which is drawn from other factors.

### C.

The Court finds that there should be a sentence reduction and that the sentence sufficient but not more than necessary to achieve Congress' sentencing goals as laid out in § 3553(a)(2) is 280 months of incarceration, consisting of 160 months for the drug conspiracy offense and 120 consecutive months for the gun offense. In making its reduction on the drug charge, the Court takes into account the mandatory minimum sentence that must run consecutive to any other sentence on the gun offense. *See Dean v. United States*, 137 S. Ct. 1170, 1176–77 (2017).

Keyes' motion for reduction of sentence, Dkts. 433, 436, will be granted in part. His term of imprisonment will be reduced to 160 months for his violation of 21 U.S.C. § 841(b)(1)(A) and 120 consecutive months for his violation of 18 U.S.C. § 924(c). All other terms of the sentence not altered by this memorandum remain in full force and effect and will be reflected in the amended judgment and commitment order.

The Clerk of Court is directed to send copies of this Memorandum Opinion to Defendant, all counsel of record, the United States Probation Office, and the United States Marshals Service for delivery to the Bureau of Prisons.

It is so **ORDERED**.

Entered this 11th day of March 2022.

NORMAN K. MOON
SENIOR UNITED STATES DISTRICT JUDGE